938 A.2d 953 (2008)
397 N.J. Super. 598
STATE of New Jersey, Plaintiff-Respondent
v.
Ernest J. READ, III, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 2007.
Decided January 24, 2008.
*954 Yvonne Smith Segars, Public Defender, for appellant (Diane Toscano, Assistant *955 Deputy Public Defender, of counsel and on the brief).
Luis A. Valentin, Monmouth County Prosecutor, for respondent (Barry J. Serebnick, Assistant Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Defendant, who was then seventeen years old, was charged with acts of juvenile delinquency which, if committed by an adult, would constitute armed robbery, and various other offenses. The Family Part granted the prosecutor's motion to waive the charges to the Law Division under the 2000 amendment to N.J.S.A. 2A:4A-26, L. 1999, c. 373, § 1. This amendment provides for the waiver to adult court of serious charges, sometimes referred to as "Chart 1" offenses, see State v. R.G.D., 108 N.J. 1, 12, 527 A.2d 834 (1987), brought against a juvenile over the age of sixteen, regardless of the probability of the juvenile's rehabilitation prior to reaching nineteen. N.J.S.A. 2A:4A-26e.
Following our decision in State in the Interest of R.C., 351 N.J.Super. 248, 798 A.2d 111 (App.Div.2002), which held that a prosecutor's motion for a waiver to adult court of a Chart 1 charge against a juvenile over sixteen must be supported by a written statement of reasons under the Attorney General's Guidelines and that a prosecutor's waiver decision is subject to judicial review, defendant moved for reconsideration of the order waiving the charges against him to the Law Division. In support of his motion, defendant submitted a report by a psychiatrist which concluded that he had various psychological impairments that contributed to his poor judgment and lack of impulse control. These impairments were partly caused by a traumatic brain injury that defendant suffered in a 1996 automobile accident. Defendant also had a severe drug dependence problem.
The Family Part concluded that defendant's psychological impairments are not encompassed by the Attorney General's Guidelines for determining whether a Chart 1 charge against a juvenile over the age of sixteen should be waived to the Law Division. The Family Part also concluded that the prosecutor's decision to waive the charges against defendant did not constitute a patent and gross abuse of discretion. Accordingly, the Family Part reaffirmed its decision to waive the charges to the Law Division.
Defendant was subsequently indicted for conspiracy to commit robbery, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; armed robbery, in violation of N.J.S.A. 2C:15-1; possession of a firearm without a permit, in violation of N.J.S.A. 2C:39-5b; and possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a. Defendant entered into a plea agreement under which he agreed to plead guilty to the armed robbery charge, and the State agreed to recommend a ten-year term of imprisonment and to dismiss the other charges.
In his guilty plea, defendant acknowledged that he stole the handgun used in the robbery from his father. Initially, defendant and his confederate planned to rob a drug dealer but later changed their minds and decided to rob a gas station in Hazlet instead. Defendant acted as a look-out while his confederate walked up to the attendant, stuck the gun in his ribs and demanded money. After the confederate took money from the attendant, he and defendant drove away from the scene. *956 The police apprehended them shortly thereafter.
The trial court sentenced defendant in accordance with the plea agreement to a ten-year term of imprisonment, subject to the 85% period of parole ineligibility mandated by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and dismissed the other charges.

I
On appeal, defendant's primary argument is that the Family Part erred in granting the State's motion to waive the charges against him to the Law Division without considering his alleged psychological impairments. This waiver was governed by N.J.S.A. 2A:4A-26a(2)(a), -26e and -26f, which provide in pertinent part:
a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:
. . . .
(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
(a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35-9, robbery which would constitute a crime of the first degree, carjacking, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping or aggravated arson[.]
. . . .
e. If the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. This subsection shall not apply with respect to a juvenile 16 years of age or older who is charged with committing any of the acts enumerated in subparagraph (a) . . . of paragraph (2) of subsection a. of this section. . . .
f. The Attorney General shall develop for dissemination to the county prosecutors those guidelines or directives deemed necessary or appropriate to ensure the uniform application of this section throughout the State.
[Emphasis added.]
Defendant was charged with one of the offenses enumerated in N.J.S.A. 2A:4A-26a(2)(a), first-degree armed robbery, and he was seventeen at the time of the alleged offense. Consequently, under N.J.S.A. 2A:4A-26e as amended in 2000, he could not prevent the waiver of this charge to adult court by showing that "the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to [his] reaching the age of 19 substantially outweighs the reasons for waiver[.]"
Before enactment of the 2000 amendment to N.J.S.A. 2A:4A-26e, experience had shown that hearings to determine whether there was a probability an older juvenile charged with a Chart 1 offense could be rehabilitated before reaching nineteen substantially delayed prosecution of such juveniles and seldom resulted in denial of a prosecutor's motion for waiver. R.C., supra, 351 N.J.Super. at 254, 798 A.2d 111. The primary objectives of the 2000 amendment were to conserve prosecutorial and judicial resources and to expedite criminal prosecutions by eliminating such hearings. Ibid. To achieve these objectives, "the Legislature vested the *957 prosecutor's office with the primary responsibility for juvenile waiver decisions when the juvenile is sixteen years or older and charged with a [Chart 1] offense." State v. J.M., 182 N.J. 402, 412, 866 A.2d 178 (2005).
Under R.C., a prosecutor's decision to waive a Chart 1 charge against a juvenile over sixteen to adult court is subject to two constraints: first, the prosecutor must submit a written statement of reasons for waiver that shows compliance with the Attorney General's Guidelines, R.C., supra, 351 N.J.Super. at 256-59, 798 A.2d 111, and second, the prosecutor's decision is subject to judicial review under a "patent and gross" abuse of discretion standard, id. at 259-60, 798 A.2d 111; see also J.M., supra, 182 N.J. at 418-19, 866 A.2d 178.
Defendant argues that the trial court erred in waiving the charges against him to adult court without considering his alleged psychological impairments, which defendant characterizes as "neurocognitive and behavioral." However, a juvenile's psychological impairments are not included in the factors that the Attorney General's Guidelines require a prosecutor to consider in determining whether to waive charges to adult court. These factors are limited to (1) the nature of the offense; (2) deterrence; (3) the effect on co-defendants of waiver to adult court; (4) the maximum sentences that could be imposed under the juvenile or criminal codes and the amount of time likely to be served; (5) the juvenile's prior record; (6) trial considerations  that is, the likelihood of conviction and potential need for grand jury investigation; and (7) victim input. Attorney General's Juvenile Waiver Guidelines (March 14, 2000).
Although a juvenile's psychological impairments are not among the factors set forth in the Attorney General's Guidelines, defendant argues that our decision in R.C. requires a prosecutor to consider a juvenile's "personal circumstances," including evidence of such impairments, in determining whether to waive charges to adult court. Defendant relies upon a part of our opinion which analogized a prosecutor's decision regarding the waiver of a juvenile complaint to adult court to a prosecutor's refusal to consent to a defendant's admission into the Pretrial Intervention Program (PTI). R.C., supra, 351 N.J.Super. at 259-60, 798 A.2d 111. In drawing this analogy, we observed that "[s]uch prosecutorial decisions involve consideration of a wide range of circumstances relating to the offense charged and the alleged offender's personal circumstances, and are closely related to a prosecutor's `charging function.'" Id. at 260, 798 A.2d 111 (emphasis added). However, this part of our opinion was addressed solely to the standard of judicial review of a prosecutor's decision to waive a complaint charging a juvenile over sixteen with a Chart 1 offense to adult court. See id. at 259-60, 798 A.2d 111. It was not addressed to the substantive standards that govern such a prosecutorial decision. Those standards are set forth in the Attorney General's Guidelines, which were not challenged and hence were not addressed in R.C. Therefore, defendant's reliance upon R.C. is misplaced.
Defendant appears to argue that even if the issue was not addressed in R.C., N.J.S.A. 2A:4A-26e requires a prosecutor to consider factors other than the seven factors set forth in the Attorney General's Guidelines  in this case, his psychological impairments  in determining whether to waive charges of a Chart 1 offense against a juvenile over sixteen to adult court. However, the legislative objective in requiring the Attorney General to adopt guidelines regarding the waiver of juvenile delinquency complaints to adult court was "to ensure the uniform application of *958 [N.J.S.A. 2A:4A-26] throughout the State." N.J.S.A. 2A:4A-26f; see J.M., supra, 182 N.J. at 419, 866 A.2d 178. It would be inconsistent with this legislative objective of uniform statewide application for an individual prosecutor to apply factors that are not set forth in the Attorney General's Guidelines in determining whether to waive a juvenile complaint to adult court.
Defendant also appears to argue that the Attorney General's Guidelines are arbitrary and capricious because they do not include a juvenile's psychological impairments as a factor a prosecutor must consider in determining whether to waive a charge of a Chart 1 offense against a juvenile over sixteen to adult court. However, as previously noted, the primary objectives of the 2000 amendment to N.J.S.A. 2A:4A-26e were to conserve prosecutorial and judicial resources and to expedite criminal prosecutions by eliminating hearings to determine whether there is a probability an older juvenile charged with a Chart 1 offense can be rehabilitated before reaching the age of nineteen. As explained in R.C.:
The determination of the probability of rehabilitation before the age of nineteen requires an evidentiary hearing at which the juvenile and the State ordinarily present expert testimony. Consequently, there is frequently delay in scheduling such a hearing. Moreover, the presentation of expert testimony and other evidence relevant to this determination may consume a substantial amount of time.
[351 N.J.Super. at 258, 798 A.2d 111.]
If a prosecutor were required to consider a juvenile's psychological impairments in deciding whether to waive charges to adult court, there would be a need for an evidentiary hearing anytime such impairments were alleged. The requirement of such a hearing would result in the same kind of an expenditure of prosecutorial and judicial resources and delay in the prosecution of older juveniles charged with serious offenses that the 2000 amendment to N.J.S.A. 2A:4A-26e was designed to prevent. Therefore, we conclude that the Attorney General's failure to include a juvenile's psychological impairments in the factors a prosecutor must consider in determining whether to waive charges to adult court was not arbitrary and capricious.
We also note that even before the 2000 amendment to N.J.S.A. 2A:4A-26e, the Supreme Court held in State in the Interest of A.B., 109 N.J. 195, 198-99, 536 A.2d 240 (1988), aff'g 214 N.J.Super. 558, 564-65, 520 A.2d 783 (App.Div.1987), that a showing that a juvenile is "developmentally disabled" did not preclude waiver to adult court. Such a psychological impairment could be considered only "in determining whether waiver would be appropriate under the criteria set forth in N.J.S.A. 2A:4A-26." A.B., supra, 214 N.J.Super. at 565, 520 A.2d 783. However, under the 2000 amendment to N.J.S.A. 2A:4A-26e, those criteria, as applied to a juvenile over sixteen charged with a Chart 1 offense, are limited to the factors set forth in the Attorney General's Guidelines, which do not include a juvenile's psychological impairments.
We do not foreclose the possibility that a juvenile's psychological impairments could be relevant, in exceptional circumstances, to a prosecutor's consideration of the factors set forth in the Attorney General's Guidelines. For example, if a juvenile charged with a Chart 1 offense suffered from a severe developmental disability, a prosecutor could consider this circumstance in determining whether waiver to adult court would promote the policy of "individual deterrence  that punishment will dissuade the [juvenile] from repeating *959 his criminal acts[,]" State in the Interest of C.A.H., 89 N.J. 326, 334, 446 A.2d 93 (1982), which is encompassed by the second factor set forth in the Attorney General's Guidelines.
However, even if the opinions contained in the report of defendant's psychiatrist were fully credited, it is clear that this case does not involve such exceptional circumstances. Defendant's expert reached the following conclusions:
[Defendant] has a history of Post-Traumatic Neurocognitive and Behavioral Symptoms secondary to a motor vehicle accident, as well as a pre-existing Attention Deficit Disorder with Dyslexia.
. . . [Defendant's] social judgment is impaired. He is essentially an isolated person and in general relates poorly to others. His insight is impaired and he has defective judgment concerning his own activities and his relationship to society.
His impulsivity, impaired ability to understand consequences of his acts and future meaningful plans is severely impaired, as is his ability to judge his behavior against the requirements of society and to self-regulate his responses to society. All of this, of course, is presently complicated by his polysubstance dependency which, may in part, be an effort at self-medicating his agitation and irritability.
Similar observations undoubtedly could be made regarding many other juveniles and adults involved in serious criminal activity. The report of defendant's expert did not indicate that he suffers from a severe developmental disability or other psychological impairment that could support a conclusion he is incapable of being deterred from criminal conduct. To the contrary, as indicated in the prosecutor's statement of reasons for the waiver, the charges against defendant involved "a pre-planned armed robbery of a gas station," for which defendant supplied a handgun stolen from his father.
Therefore, the trial court correctly concluded that the prosecutor's decision to waive the charges against defendant did not constitute a patent and gross abuse of discretion.

II
Defendant also argues that N.J.S.A. 2A:4A-26 is unconstitutional because it permits the Family Part to waive jurisdiction to adult court based on judicial fact-finding by a preponderance of the evidence rather than jury fact-finding beyond a reasonable doubt. In support of this argument, defendant relies upon Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
Initially, we question whether the waiver to adult court of the charges against defendant was based on judicial findings of any disputed facts. The essential facts upon which the waiver was based  that there was probable cause to believe defendant had committed an armed robbery, which is a Chart 1 offense, and that he was over the age of sixteen at the time of the offense  were undisputed. Furthermore, defendant has not identified any disputed facts regarding the applicability of the factors set forth in the Attorney General's Guidelines that could have supported a denial of the prosecutor's motion for waiver.
In any event, the requirement of jury fact-finding based on proof beyond a reasonable doubt does not apply to a pretrial determination such as whether to waive a complaint against a juvenile to adult court. The essential holding of Apprendi, which was reaffirmed and refined in Blakely v. Washington, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 2537-38, 159 L.Ed.2d 403, 413-14 *960 (2004), is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, supra, 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455. Thus, Apprendi and Blakely deal solely with the sentencing stage of a criminal proceeding. See State v. Natale, 184 N.J. 458, 481-83, 878 A.2d 724 (2005).
In contrast, the determination whether to waive charges against a juvenile to adult court is made at the initial charging stage of a case. It is similar in this respect to a prosecutor's decision to present a case to a grand jury rather than to remand the case to municipal court for trial on lesser charges. Furthermore, as in a grand jury proceeding, the essential factual issue in determining whether to grant a waiver to adult court of a Chart 1 offense is whether there is "probable cause to believe" the juvenile has committed one of the offenses specified in N.J.S.A. 2A:4A-26a(2). If the Family Part finds that the State has established such probable cause and the other prerequisites for waiver to adult court set forth in N.J.S.A. 2A:4A-26, the sole consequence of these findings is that jurisdiction over the case is transferred to the Law Division. See State v. R.G.D., 108 N.J. 1, 18, 527 A.2d 834 (1987). After such a transfer, the case proceeds in the same manner as any other criminal case. The State must present the charges to a grand jury, and if an indictment is returned, the State must prove the elements of the charged offense to a petit jury beyond a reasonable doubt. If the jury finds the juvenile-defendant guilty, the trial court must then impose sentence in accordance with the same statutory and constitutional provisions that govern the sentencing of any other criminal defendant, including the constitutional constraints upon sentencing set forth in Apprendi and Blakely.
We recognize that the waiver to the Law Division of charges against a juvenile-defendant substantially increases his sentencing exposure. However, the same is true of a variety of other decisions made at the charging stage of a criminal proceeding, such as a prosecutor's refusal to consent to a defendant's admission into PTI, see N.J.S.A. 2C:43-12 and R. 3:28, or a grand jury's determination to indict a defendant for a more serious rather than a lesser offense. The mere fact that such a decision, including a determination as to which court has jurisdiction to hear the case, can impact the length of a potential sentence does not convert that decision into a part of the sentencing process which under Apprendi and Blakely requires jury fact-finding beyond a reasonable doubt.
This conclusion is supported by the decisions of every federal and state court that has considered the issue. See, e.g., United States v. Miguel, 338 F.3d 995, 1004 (9th Cir.2003); State v. Kalmakoff, 122 P.3d 224, 225-28 (Alaska Ct.App.2005); State v. Rodriguez, 205 Ariz. 392, 71 P.3d 919, 925-27 (Ct.App.2003); People v. Beltran, 327 Ill.App.3d 685, 262 Ill.Dec. 463, 765 N.E.2d 1071, 1075-76 (2002); State v. Jones, 273 Kan. 756, 47 P.3d 783, 793-98 (2002); Caldwell v. Commonwealth, 133 S.W.3d 445, 452-53 (Ky.2004); In re J.C.P., 716 N.W.2d 664, 667-70 (Minn.Ct. App.2006); State v. Gonzales, 130 N.M. 341, 24 P.3d 776, 783-85 (Ct.App.2001); State v. Lopez, 196 S.W.3d 872, 875-76 (Tex.App.2006); In re Hegney, 138 Wash. App. 511, 158 P.3d 1193, 1200-01 (2007). But cf. Commonwealth v. Quincy Q., 434 Mass. 859, 753 N.E.2d 781, 787-90 (2001) (holding that statute that provided for more severe sentence if trial court made finding, subsequent to adjudication of guilt, that defendant was "youthful offender," *961 required the State prove to a jury beyond a reasonable doubt the facts required for defendant to be so classified).
Finally, we note that if the charges against a juvenile-defendant are not waived to adult court, a Family Part judge determines whether the State has proven the charges and imposes sentence without submission of the case to a jury. Pressler, Current N.J. Court Rules, comment 1 on R. 5:21-7 (2008) (A juvenile tried on a charge of delinquency "is not entitled to a trial by jury."); see McKeiver v. Pennsylvania, 403 U.S. 528, 540-51, 91 S.Ct. 1976, 1984-89, 29 L.Ed.2d 647, 658-64 (1971); State in the Interest of J.W., 57 N.J. 144, 145-46, 270 A.2d 273 (1970).

III
Defendant also argues that the trial court abused its discretion in sentencing him to a ten-year term of imprisonment, subject to the 85% period of parole ineligibility mandated by NERA, because of his psychological impairments.
Defendant's sentence was imposed pursuant to a negotiated plea agreement. The ten-year term was the lowest ordinary sentence for the first-degree offense of armed robbery to which defendant pled guilty. N.J.S.A. 2C:43-6a(1). He could have been sentenced to a lesser term, within the range for a second-degree offense, only if the court was "clearly convinced that the mitigating [sentencing] factors substantially outweigh[ed] the aggravating factors and [that] the interest of justice demand[ed]" such a lesser sentence. N.J.S.A. 2C:44-1f(2).
A trial court's authority to impose a downgraded sentence under N.J.S.A. 2C:44-1f(2) is "limited to those circumstances in which defendant can provide `compelling' reasons for the downgrade." State v. Megargel, 143 N.J. 484, 502, 673 A.2d 259 (1996). In determining whether such reasons exist, a court must keep in mind the legislative intention that "the severity of the crime [is] the most single important factor in the sentencing process." Id. at 500, 673 A.2d 259. Thus, "the standard governing [sentencing] downgrading [under N.J.S.A. 2C:44-1f(2)] is high." Ibid.
Before a sentence may be imposed under this section, "[t]he sentencing judge must be (1) clearly convinced that the mitigating factors substantially outweigh the aggravating factors and (2) the interest of justice must demand the downgrade." Id. at 495, 673 A.2d 259. Defendant failed to satisfy either requirement.
The sentencing judge identified a single mitigating factor, the absence of an adult criminal record, N.J.S.A. 2C:44-1b(7), and a single aggravating factor, the need for deterrence, N.J.S.A. 2C:44-1a(9), and he concluded that the mitigating factor "preponderat[ed]" over the aggravating factor. Defendant argues that the judge should have identified additional mitigating factors and concluded that those factors "substantially outweigh" the single aggravating factor.
Defendant claims that his "willingness . . . to cooperate with law enforcement authorities," N.J.S.A. 2C:44-1b(12), was an applicable mitigating factor because he confessed to the armed robbery. However, we question whether a confession qualifies as "cooperation" within the intent of this subsection, at least in the absence of any indication the confession identified other perpetrators or assisted in solving other crimes, compare State v. Reed, 211 N.J.Super. 177, 189 n. 2, 511 A.2d 680 (App.Div.1986), certif. denied, 110 N.J. 508, 541 A.2d 1368 (1988), with State v. Morant, 241 N.J.Super. 121, 141, 574 A.2d 502 (App.Div.1990), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990), and in any *962 event, defendant's confession was not entitled to any substantial weight in determining his sentence in view of its limited benefit to the State.
Defendant also claims that the court should have identified as a mitigating factor that his "imprisonment . . . would entail excessive hardship," N.J.S.A. 2C:44-1b(11), because of his psychological impairments. However, for the reasons discussed in section I of this opinion, we are unable to conclude that those impairments would cause defendant to suffer any greater hardship from imprisonment than any other inmate.
We also reject defendant's claim that his participation in the armed robbery was "substantially influenced by another person more mature than [he]," N.J.S.A. 2C:44-1b(13). Defendant's confederate was only six months older than he, and the record does not indicate that the confederate played a dominant role in the planning and commission of the robbery.
In addition, the only mitigating sentencing factor identified by the sentencing judge, the absence of an adult criminal record, was only entitled to limited weight, because defendant had a significant juvenile record consisting of adjudications of delinquency for simple assault, criminal mischief and a drug offense. See State v. Torres, 313 N.J.Super. 129, 162, 713 A.2d 1 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998). Therefore, the record before the sentencing judge did not support the conclusion that the mitigating sentencing factors substantially outweighed the aggravating factor.
Furthermore, even if this requirement for a downgraded sentence had been satisfied, there would be no basis for concluding that the "interest of justice demand[s]" such a sentence. N.J.S.A. 2C:44-1f(2). The focus of the court in applying this test should be the "severity of the crime" rather than the personal circumstances of the offender. Megargel, supra, 143 N.J. at 500, 673 A.2d 259. Defendant's sentence was for a planned armed robbery for which he supplied the handgun. Although defendant acted as the look-out while his confederate committed the robbery, we see no basis for characterizing defendant's role as only secondary. See id. at 501, 673 A.2d 259. Furthermore, defendant failed to present any evidence of the kind of psychological impairment that would be relevant to this determination. See ibid.; compare State v. Jarbath, 114 N.J. 394, 555 A.2d 559 (1989).
Accordingly, the trial court did not abuse its discretion in sentencing defendant to a ten-year term of imprisonment.
Affirmed.