**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1593-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMONT LOPER, a/k/a
LAMONT ROPER,
MUHAMMAD LATIF and
LOTTI LAMONT,

    Defendant-Appellant.

_____

Submitted February 12, 2020 – Decided May 18, 2020

Before Judges Koblitz and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-10-2153.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia H. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Amanda Gerilyn Schwartz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Lamont Loper appeals from an October 5, 2018 judgment of conviction after pleading guilty to second-degree possession of cocaine with the intent to distribute in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(b)(2). We affirm.

Defendant raises the following issues on appeal:

> POINT I: THE EVIDENCE MUST BE SUPPRESSED BECAUSE THE SEARCH WAS THE PRODUCT OF AN UNCONSTITUTIONAL DETENTION.
>
> POINT II: THE SENTENCE VIOLATES THE INJUNCTION AGAINST IMPOSITION OF THE MAXIMUM PAROLE DISQUALIFIER ON TOP OF A MID-RANGE BASE TERM AND WAS IMPOSED WITHOUT CONSIDERATION OF A RELEVANT MITIGATING FACTOR.

On October 10, 2017, defendant was indicted for third-degree possession of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-10(a)(1); second-degree possession of cocaine with the intent to distribute in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(b)(2); and second-degree possession of cocaine within 500 feet of certain public property, N.J.S.A. 2C:35-7.1(a).

The relevant facts are discerned from the transcripts of defendant's January 18, 2018 suppression hearing and October 5, 2018 sentencing hearing.

A-1593-18T3

This case began on May 14, 2017, when Detective Brian Hambrecht of the Atlantic City Police Department received information from an allegedly reliable confidential informant (C.I.) that defendant regularly drove from Bridgeton to Atlantic City carrying drugs he planned to sell. Hambrecht found a photo of defendant online but took no further action at that time.

About two months later, around July 11, the C.I. told Hambrecht defendant drove a black Ford Taurus for his trips from Bridgeton to Atlantic City via the Atlantic City Expressway. The C.I. stated defendant's wife, whom he drove to work, rode in the car with him, and that defendant generally arrived at the toll booth near exit 4 between 2:30 and 3:30 p.m., where he would use the right cash-only lane. The C.I. also provided Hambrecht with the vehicle's license plate number and told him where defendant would park the car in Atlantic City. Hambrecht went to the site in Atlantic City and confirmed that the make, model, and license number matched the vehicle described by the C.I.

Two days later, on July 13, Hambrecht was parked on the Atlantic City Expressway conducting surveillance with other detectives, one of whom was parked at exit 4. At approximately 2:55 p.m., the other detective "observed the vehicle with a female in the car come through the toll booth, the right lane, pay

A-1593-18T3

cash, and drive east . . . towards Atlantic City. . . ." The vehicle then passed Hambrecht, who followed it and conducted a motor vehicle stop.

Hambrecht ordered defendant out of the car and told him he received information that he was transporting drugs. Defendant stated, "I have stuff in the car," and offered to get the drugs for the detectives. Hambrecht advised defendant that he did not have to consent to a search, could terminate the search at any time, and had the right to be present during the search. Defendant signed a form consenting to a search of the car, and the detectives found nineteen grams of crack cocaine.

On January 30, 2018, the court denied defendant's motion to suppress and issued a written opinion. The court found, based on Hambrecht's testimony, that the C.I. provided reliable, corroborated information which was very detailed and not readily available to the average person in the community. The court further found that Hambrecht reasonably relied upon the information provided by the C.I., which created a reasonable particularized suspicion that drug activity had occurred or would occur in the future, which ultimately led to the questioning of defendant. Although the corroborated tip did not provide the detectives with enough information to conduct a search, defendant gave informed and voluntary consent to search the vehicle.

A-1593-18T3

On June 6, 2018, defendant entered a negotiated plea to the charge of second-degree possession of cocaine with the intent to distribute in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(b)(2). In exchange for the plea, the State agreed to recommend a seven-year sentence with three and one-half years of parole ineligibility. The court sentenced defendant in accordance with the plea agreement.

This appeal followed.

## I.

Our review of a motion judge's factual findings in a suppression hearing is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings." State v. Gonzales, 227 N.J. 77, 101 (2016) (citation omitted). "Those findings warrant particular deference when they are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (citations omitted). The suppression court's "findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction." Robinson, 200 N.J. at 15 (citation and internal quotation marks

5

omitted). However, we owe no deference to the trial court's legal conclusions or interpretations of the legal consequences flowing from established facts, and we review questions of law de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Defendant argues the trial court erred in denying his motion to suppress the drug evidence because the search was the product of an unconstitutional detention after an unjustified vehicle stop. We disagree.

"[T]he State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement." State v. Mann, 203 N.J. 328, 337-38 (2010) (citation and internal quotations omitted). "One such exception is denominated an investigatory stop or a Terry[1] stop." Id. at 338. A police officer may conduct an investigatory stop if it is based on "'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Birkenmeier, 185 N.J. 552, 561-62 (2006) (quoting State v. Rodriguez, 172 N.J. 117, 126-27 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 21(1968))).

"It is well established that information provided by an informant can provide the basis for an investigatory stop." State v. Thomas, 110 N.J. 673, 683

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

A-1593-18T3

(1988). The court must consider the informant's "veracity and basis of knowledge." State v. Keyes, 184 N.J. 541, 555 (2005) (citation omitted). "The veracity factor may be satisfied by demonstrating that the informant has proven reliable in the past, such as providing dependable information in previous police investigations." Ibid. The "basis of knowledge" underlying an informant's tip can be established by "direct evidence of the manner in which the informant learned of the criminal activity, by details that establish that the informant's knowledge has been derived from a trustworthy source, or by a prediction of hard-to-know future events." State v. Williams, 364 N.J. Super. 23, 34-35 (App. Div. 2003); see also State v. Smith, 155 N.J. 83, 94-95 (1998). When assessing reliability, courts must give "sufficient weight to the officer's knowledge and experience and to the rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Arthur, 149 N.J. 1, 10 (1997).

Here, the C.I. provided the reasonable and articulable suspicion necessary to justify an investigative stop of the defendant. The C.I. provided police with the date and approximate time of defendant's travel, his starting location, the vehicle defendant would be traveling in, that defendant's wife would be with him, defendant's direction of travel, including what lane he would use to pay the

toll, and the approximate time. Based on these details and predictions of future events, it can be inferred that "the information had a sufficient basis of knowledge of the underlying criminal conduct." Smith, 155 N.J. at 95. Therefore, the officers had reasonable suspicion to conduct an investigatory stop of defendant. See Birkenmeier, 185 N.J. at 561 (finding reasonable suspicion based on an informant's tip identifying the defendant, his car, his time of departure and direction of travel, and that he would be carrying a laundry bag).

II.

Defendant next argues that the matter must be remanded for a resentencing because the court did not credit defendant with mitigating factor twelve, and therefore, it had no mitigating factor to weigh against the aggravating factors in assessing the propriety of a parole disqualifier. We review a trial judge's sentencing under an abuse of discretion standard. State v. Pierce, 188 N.J. 155, 166 n.4 (2006). "[T]rial judges are given wide discretion so long as the sentence imposed is within the statutory framework." State v. Dalziel, 182 N.J. 494, 500 (2005).

Defendant argues the court should have credited his cooperation with the police as a mitigating factor under N.J.S.A. 2C:44-1(b)(12), because during the

stop he admitted that he had drugs in the car, signed a consent to search form, and attempted to secure the drugs for the officers. We disagree.

We have rejected the argument that a confession qualifies as cooperation under this subsection where the defendant did not identify another perpetrator or assist in solving other crimes. State v. Read, 397 N.J. Super. 598, 613 (App. Div. 2008) (finding a "defendant's confession was not entitled to any substantial weight in determining his sentence in view of its limited benefit to the State"); but see State v. Reed, 211 N.J. Super. 177, 180, 189 (App. Div. 1986) (finding a defendant who gave a recorded statement may also be entitled to N.J.S.A. 2C:44-1(b)(12) as a mitigating factor). We do not suggest N.J.S.A. 2C:44-1(b)(12) can never be considered where a defendant confesses but does not assist in solving other crimes, but here, defendant's confession was of limited use and the factor was not clearly supported by the record.

We also reject defendant's argument that the trial court's imposition of the parole term, without consideration of mitigating factor twelve, was disproportionate to the base term and therefore excessive. A second-degree crime under N.J.S.A. 2C:35-5(b)(2) does not carry with it a mandatory period of parole ineligibility, but N.J.S.A. 2C:43-6(b) states "where the court is clearly convinced the aggravating factors substantially outweigh the mitigating factors,

. . ." the court can impose a term of parole ineligibility, provided the term does not exceed one-half of the base term.

Our Supreme Court acknowledged "the longest permitted minimum term, one-half the base term, would ordinarily be imposed only on base terms at or near the top of the range for that degree of crime," State v. Towey, 114 N.J. 69, 81 (1989), but held that such inconsistencies are not improper if justifiable, id. at 81-82. Here, the sentencing judge found "aggravating factors three, six and nine preponderate over the absence of mitigating factors," defendant was sentenced in accordance with his plea agreement, and defendant also acknowledged, in his plea agreement, that "the court could, in its discretion, impose a minimum time in confinement to be served before [becoming] eligible for parole, which period could be as long as one half of the period of the custodial sentence imposed." We discern no abuse of the court's discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1593-18T3